ALICE S. BULLARD (LOCKLEAR), Widow; ALICE S. BULLARD (LOCKLEAR), Guardian Ad Litem for JENNINGS WADNEY BULLARD, Minor Son, and JULIETTE BULLARD, Minor Daughter of JENNINGS BULLARD, DECEASED, Employee Plaintiffs v. JOHNS-MANVILLE CORPORATION Employer and THE TRAVELERS INSURANCE COMPANY Carrier Defendants

No. 7810IC910

(Filed 17 July 1979)

**Master and Servant § 67.2—** workmen's compensation — exposure to asbestos — subsequent death from cancer — no causal relation shown

Evidence was insufficient to support the conclusion of a deputy commissioner of the Industrial Commission that deceased employee's death resulted from cancer caused by asbestos which the employee encountered while working for defendant, though there was ample evidence in the record that as a general matter exposure to asbestos increases the risk of developing cancer, since none of the evidence specifically related to decedent indicated that his cancer was caused by exposure to asbestos; no asbestos bodies were found in his lungs; there was no scarring of his lungs; and no expert gave an opinion that decedent's cancer was caused by asbestos.

APPEAL by defendants from the Industrial Commission. Opinion and award filed 31 May 1978. Heard in the Court of Appeals 12 June 1979.

Jennings Bullard, the husband and father of the plaintiffs, died in April 1974 of cancer. The parties stipulate that they are bound by the North Carolina Workmen's Compensation Act, and that the issue for determination by the Industrial Commission is whether there was a causal relationship between Bullard's death and the environment in which he was employed, an environment in which asbestos was used as part of the manufacturing process.

Deputy Commissioner Roney heard evidence and found as fact that "[t]he carcinogenic agent that caused the [cancer] was asbestos," and that "[d]ecedent encountered the carcinogenic agent that caused the [cancer] while working for defendant employer." He awarded the plaintiffs compensation of $20,000 at $56 per week, and medical and burial expenses. Defendants appealed to the full commission, which affirmed the deputy commissioner's order. Defendants appeal.

*Moses, Diehl & Pate, by Warren L. Pate, for plaintiff appellees.*

*Gene Collinson Smith for defendant appellants.*

ARNOLD, Judge.

Defendants argue that there is insufficient evidence in the record to support the finding that the cancer which caused Bullard's death resulted from his work environment. We agree.

Evidence was presented that the decedent worked in the Johns-Manville plant from 1966 through October 1971. The decedent was exposed there to asbestos fibers in the air (*e.g.*, one fiber per cubic centimeter in 1970 according to a survey made by an industrial hygenist). Dr. Philip Pratt, an anatomic pathologist, testified that "exposure to asbestos is associated with a substantial increase and risk of having primary carcinoma in the lung." However, Dr. Pratt examined autopsy slides of the interior surface of decedent's lung and found "no particles of asbestos bodies" there. There is a more effective way to find asbestos bodies in the lungs, but it was not used. Dr. Pratt also testified that "a contraction of lung cancer by a forty-two year old male is a rare occurrence in the absence of cigarette smoking and exposure to asbestos." It is stipulated by the parties that plaintiff would testify that the decedent smoked ten or less cigarettes a day on the average. According to Dr. Pratt, "the amount of smoking is related to the risk of cancer and . . . ten cigarettes a day is in the range that would show an increased incidence." He testified that "it is probable that the asbestos exposure contributed to the risk" of developing cancer, but that he could not say what was the cause of decedent's cancer; smoking and the inborn susceptibilities of a particular person also contribute to the development of such a tumor. Decedent's tumor was not a mesothelioma, which is always associated with exposure to asbestos, but a broncogenic carcinoma, the risk of which is increased by exposure to asbestos.

Dr. Marvin Kushner, a professor of pathology, also examined autopsy slides and found "no visible evidence of inhalation of asbestos bodies nor . . . evidence of the kind of scarring that might be produced by such inhalation." No evidence of asbestos bodies in the lungs appeared in the autopsy report. He was "unable to tell . . . what the origin of that cancer was. It was his

. . . opinion that the decedent's death was not caused by or related to his occupational exposure to asbestos." It was also Dr. Kushner's opinion that a person would not develop a tumor like decedent's without sufficient exposure to asbestos to cause scarring of the lung, and no such scarring was present.

Dr. Jacob Churg, a professor of pathology, testified that "there have been considerable medical opinions that scarring is necessary before cancer can occur as a result of asbestos exposure," but that "there is a fair amount of evidence that it does occur without significant scarring." Asked in a hypothetical question whether there was a causal connection between the decedent's exposure to asbestos and his development of cancer, Dr. Churg testified, "I would say that there may be a possible connection, based on the fact that there was asbestos present in the air, the individual worked in and undoubtedly inhaled such air, that individuals exposed to asbestos do have a higher incidence of carcinoma of the lung." Either the smoking or the exposure to asbestos "was a possible contributing cause."

There is ample evidence in the record that as a general matter exposure to asbestos increases the risk of developing cancer. However, none of the evidence specifically related to the decedent indicates that his cancer was caused by exposure to asbestos. No asbestos bodies were found in his lungs, and there was no scarring. No expert gave an opinion that decedent's cancer was caused by asbestos; Dr. Pratt said he did not know the cause, Dr. Kushner said that he did not think asbestos was the cause, and Dr. Churg said only that either smoking or asbestos could have been a "possible contributing cause."

We hold that this evidence is insufficient to support the commissioner's finding. The order of the Industrial Commission is

Reversed.

Judges HEDRICK and VAUGHN concur.